Morning. Please the court, my name is Brian Knutson. I'm here today on behalf of Plaintiffs Below and Appellanteer, Wild Fish Conservancy, and Harriet Bullitt. With court permission, I'll reserve three minutes for rebuttal. This case presents the issue of whether the Leavenworth National Fish Hatchery, located on Icicle Creek in the Cascade Mountain Range of Washington, is required by Section 8 of the Reclamation Act to comply with several state laws relating to the control, use, and appropriation of water. The managers of the hatchery make a decision at least once each year, frequently more often, to divert water from Icicle Creek into an artificial canal located at the hatchery. These diversions are not insignificant. The hatchery diverts the majority of the Icicle Creek, and frequently the entire flow of the river, into a mile-long canal, thereby dewatering a mile-long segment of Icicle Creek. The dewatered segment of Icicle Creek lies on property owned by Plaintiff Harriet Bullitt, where she lives and adjacent to where she operates the Sleeping Lady Resort as her primary business. The Icicle Creek River provides important habitat for several fish species, some of which are listed as endangered under the Endangered Species Act. Mr. Knudson, may I ask a practical question? I understand, you know, they're important, just straight legal questions, but what do you really want to accomplish with this lawsuit? I mean, do you want the government to ultimately reduce its flow, or are you trying to stop a diversion entirely? I mean, if we carry this out to the end, do you mind sharing with me what your ideal solution would be to this? Yes, Your Honor. The purpose in enacting Section 8 of the Reclamation Act by Congress was to ensure that reclamation projects comply with state water laws in the same manner as any other water user. Plaintiffs Harriet Bullitt and members of Wild Fish Conservancy use water. They enjoy the benefits of the vested in streamflow water rights for Icicle Creek. So how do you think the government's been violating state law? The government has been violating state law incorporated by Section 8 of the Reclamation Act by diverting water at a headgate canal, referred to in the briefing as Structure 2 or Dam 2, into its canal without a permit. Right, but I mean, if they got it, would you oppose the permit? I assume you would. Your Honor, the permitting process includes several important processes. It requires that the Department of Ecology make various investigations and ensure that any authorized or permitted diversions will not be detrimental to the public interests. So my clients would certainly watch the permitting process and would hope that Ecology would impose terms and conditions ensuring that the diversions would not be detrimental to the public interest. And my clients would be surprised if Ecology would grant a permit that would allow the diversion of the entire flow of Icicle Creek. But they have approved the Flow Management Plan, which is a two-inch thick document that goes into a number of these issues. I know that's something that you're challenging, but where exactly, I mean, I guess my question is, do you have the wrong defendant? I mean, is your beef with the state of Washington that they're not enforcing their own law? Your Honor, it's true that we have appealed a document referred to as a 401 certification. The Washington Department of Ecology reviewed hatchery operations under a provision of the Clean Water Act, Section 401 of the Clean Water Act. The defendants below argued that abstention was appropriate, that that was the proper forum for us to have our grievances addressed. The Department of Ecology has now finished that document and determined that the statutes alleged in our case are not relevant to its analysis under Section 401 of the Clean Water Act. Ecology listed the various statutory provisions that it believed relevant to its 401 certification process and did not list the Washington Water Code, the Washington Fishway Law. It listed certain water, I'm sorry, certain federal states and some state statutes relating to water quality but not to the Washington Water Code. And so while the defendants are arguing that abstention is appropriate because 401 certification should provide us the relief that we seek, the agency actually charged with that process, issuing the application, has taken the position that it doesn't have authority under Section 401 of the Clean Water Act to address the Washington Water Code violations at issue. And yet these are the very same people that if a permit or application were filed to suit your stated argument, these are the very same people that would be reviewing that. Fair enough? That's true, Your Honor. It would be a different department within the Department of Ecology. It would be Can I just, one historical question, and forgive me if I'm outside the record, I pretty much believe I am, but I'm curious. The original permit application we don't have, right? This goes back a nice age, but presumably to seek a permit to alter the flow in the Historic Creek, in Icicle Creek itself, was to facilitate their what was originally done, right? That's correct, Your Honor. They have to be able to control the flow to effectively operate a hatchery. Is that essentially what it's about? The original water permit application contemplated that there was a requirement to have in-stream flows in the natural channel of Icicle Creek where they were raising fish at the time. And to effect that, they built this canal where they could divert the water so as to maintain whatever appropriate levels they thought were suitable for the hatchery, right? That's correct, Your Honor. What are we arguing about? I mean, so then they move the hatchery into the canal where they have the spawning pools and the kinds of facilities that a hatchery ordinarily has, and they have the whole situation but in through the hatchery in the, what are we calling the hatchery canal? The hatchery canal! And that affects the flow of water from time to time in the Historic Creek, right? Isn't it almost perforce? Wasn't that all covered in the original application? I mean, if we're going to divert the water, where's the water going to go? Presumably, in that application, if we had it, there was some reference that we're going to build a canal. That's the only way we can affect the flow of the water, right? Your Honor, two points. One point is it's very clear right now that there is no water right to divert water at Structure 2. The hatchery has water rights for diversions at other structures but has no water right to divert water into the canal. The factual record as to what the original water right authorized, which has now been superseded and doesn't apply to anything at Structure 2, is undeveloped and unclear because the court dismissed this matter on a motion to dismiss, so we don't have the benefit of a full administrative record. But it is our belief and position that the original application sought to have protection of in-stream flows in the natural channel where fish were being grown. In other words, the hatchery applied for a water right to keep water in the natural channel. And the purpose of that would be to ensure that upstream diversions, new diversions, couldn't come in and have senior water rights that would then dry up the river. The hatchery, at the same time, built the canal to push flood flows away from the ponds where fish were being grown, but it never applied for a water right to divert water into the canal to divert those flood flows. And so it's our position that the hatchery has never sought a water right for diversions at Structure 2. But if your gripe is with the water right, then the statute has run. If it's the diversion itself, the statute probably hasn't. Right, Your Honor. So, I mean, that's the fact of the water right, it seems to me, is perhaps not relevant. It's relevant historically, and I grant you that, but in terms of what you can sue about in this, I think that's probably passed. Well, that's correct. And our point is that the hatchery's existing water rights are not relevant to the court's analysis because it's undisputed that the hatchery does not have a water right to divert water at Structure 2. The hatchery's now taking the position, for the first time on appeal, that they don't need a water right because the hatchery is actually part of Bicycle Creek. It's somehow become another channel of Bicycle Creek. Doesn't the state of Washington agree with that? Your Honor, there's nothing in the record indicating the Department of Water. But it's our position that there is no water right to divert water at Structure 2, and the statutory prohibition at issue, the Washington Water Code, prohibits diversions made without a water right. And so the actual water rights that were issued are irrelevant to the evaluation of whether or not the statute of limitations is run as to the violations of unpermitted diversions. So, why do you think, you know, the doctrine of primary jurisdiction, and it actually came up yesterday a bit too, is a bit odd in the way that we, I don't think in the circuit, we've used it to apply to a state agency before. But assuming that it does, why wasn't the district court wrong in saying, look, let's let the state process play out, and if you're unhappy at the end of it, then we can take up the federal issues? Your Honor, the Section 8 of the Reclamation Act raises a federal question. It's a... No doubt. No doubt. But I mean, why was the district court wrong in saying, well, I realize that, but let's let the state administrative agency process play out before we get to those. Right, and again, the reason that was error is because there's no mechanism for my clients to obtain a determination from Ecology as to whether or not it believes there to be a violation of the Washington Water Code or the Fishway Statute. And again, Ecology is taking the position in the 401 certification, which the appellees are pointing to as the proper forum, that it does not have the authority to address violations of the Water Code and the Fishway Law. And so my clients, while they have appealed that and they're trying to argue that Ecology should address those issues, it's clear that all the parties are going to argue that it's not relevant under Section 401 of the Clean Water Act. Right, well, describe for me the appellate process. You're going to first, do you go to Superior Court first, then? The 401 certification is appealed to an administrative body referred to as called the Pollution Control Hearings Board that makes the determination. That decision is, if it's appealed, appealed to Thurston County Court. So then Superior Court, Court of Appeal, Supreme Court. Correct. But I mean, in any of those stages, any of those entities could say you're right and they're wrong, right? That's correct, Your Honor, but again... Let me pause you for a second. So if the federal court comes in and says, no, we're going to make that determination, and it ends up to be a state determination, where does that leave us? But again, Your Honor, the parties are simply arguing that Ecology should address those statutes. We're not arguing that Ecology addressed them incorrectly, and so the boards and the courts are going to defer to Ecology's interpretation of its own statutes, and if Ecology is arguing that the Section 401 of the Clean Water Act doesn't provide a jurisdiction, it's, you know, it's sort of apples and oranges. We're arguing that it should be considered bare, whereas here we have direct, unquestionable federal jurisdiction under the South Delta Water Agency case, that Section 8 of the Reclamation Act and the Administrative Procedure Act provide federal jurisdiction to resolve the claims at issue. Okay. Now, the court, the district court below, again, ruled that the statute of limitations precluded review, and he did so without evaluating the statutory prohibitions that were actually at issue, and we were getting to this a minute earlier. Again, we're not challenging the issuance of water rights. The district court found that our claims were precluded because they were raised more than six years after the issuance of water rights, and again, it's now undisputed that the hatchery does not have water rights for diversions of structure, too. The actual prohibition that we are seeking to enforce is the Washington Water Code requirement that all water users in the state of Washington apply for a permit and not divert until a permit is acquired, and those violations occur, discrete violation occurs, each time an unpermitted diversion is made with a new statute of limitations for each violation. Plaintiffs are also seeking... So, essentially, no statute of limitations is a practical matter. Well, that's not true, Your Honor, because the plaintiffs are not seeking redress for violations of the statute that occurred outside of the statute of limitations period, and to prevent future unpermitted diversions. Right, but your theory is every time they divert, the statute starts running again. So, that's annually. That's correct, Your Honor, and, you know, for example, a bank robber is not going to argue that the statute of limitations protects him because he robbed his first bank outside of the statute of limitations period, and we believe that the hatchery's are analogous to a repeating act that every time it occurs, it violates an ongoing prohibition. It's not a prohibition that applied only at one specific point in time. Well, different bank robberies are different bank robberies, but this act is the same act all the time. In other words, if you have to rely on 706-2, are you arguing that we have, in essence, a continuing violation that would enable you to effectively prosecute this claim whenever? Your Honor, it's not exactly accurate to say that it is identical each time. The hatchery makes diversions at varying times of the year, sometimes more frequently than others, and for varying purposes. Sometimes the hatchery diverts water for purposes to recharge its aquifer wells. Other times it does it for fish propagation purposes, and so it's not an identical act that occurs at the exact same time every year for the same purposes. But each of them is offensive to you because of the lack of a permit. Correct. Now, I'm going to go outside of the record. You don't have to tell me the answer to this if you don't want to, but have there been informal discussions going on prior to the lawsuit regarding working something out with them? I mean, how much water diverted would be acceptable to your clients? Your Honor, the Court's probably aware that this case was filed some time ago and that there's been some time before the initial filing in the current appeal. There's been extensive discussion since the case was filed in attempts to resolve the matter that have failed, and certainly prior to litigation there was extensive collaborative efforts between the parties, especially Ms. Bullitt, who has worked very cooperatively with the hatchery for a long time in an effort to address some of her concerns with the hatchery operations. Right. Well, I guess the question is I was going to ask the same thing, is that it seems to me that really the problems are solvable if the parties get together, and on the other hand, you have a very difficult administrative process to follow and we have some difficult issues, but we do have these circuit mediators and I'll ask the government the same question of whether that might be of assistance. And I gather you're willing to mediate, but you're not optimistic. Is that your position? Your Honor, we have worked extensively with the generous mediation services offered by the Ninth Circuit and we're certainly willing to continue that process, but my clients would request that this judicial process not be stayed any longer. This judicial process was stayed for about two years while the parties engaged in substantial mediation efforts. Thank you. Do you want to save some time for rebuttal? Thank you, Your Honor. I realize you didn't hit all your issues, but you briefed them well. May it please the Court, my name is Robert Stockman here on behalf of the Federal Defendants. We ask this Court to affirm the District Court's dismissal for lack of jurisdiction, and there are at least three jurisdictional barriers to plaintiff's suit. I'm going to try to address them in this order. First, it's time for it barred by Section 2401. Well, I agree with you as to the, I mean, I tend to agree with you as to the discussion of the water rights, and I don't think plaintiffs have disputed that, but why isn't a diversion a re-trigger in terms of the permitting requirement? The first question becomes that you can't assess whether or not a diversion has occurred without getting into what the state, what the hatchery is allowed to do under state water law. And I think it's helpful here to look at the excerpts of record in page 139 specifically, where the state hydraulic engineer said, I'm familiar with the operations of this hatchery. This was back in 1942. And part of those operations has always been that Structure 2 is closed and flow is sent down the hatchery channel. In fact, that's been the norm for the last 62 years, or 67 years, and the state of Washington was well aware of it at that time, and issued a permit that authorized the way the hatchery was operated. And again, they shut Structure 2, and it was reviewed again in 1983, and the state of Washington was well aware of that, and issued and revised the water rights. And these were public processes. Someone lodged a protest in 1942, and it was rejected by the state. It was publicly recorded. It was again a public process in 1943. Again, there was a lodging of a protest. So the problem is that they're characterizing it as we're not challenging our water rights. But what they're really asserting is that when we went through that process and obtained water rights to operate the hatchery in precisely this way, we didn't get the kind of language they think is necessary in these permits. Well, how do we know since we don't have the original permit in the record? Well, we do have the original permit. And the problem is it is amenable to... Oh, where is it? Where is the record? Why don't you give us a... I'm sorry, I believe it's 139 to 142. It is, I will say, it's subject to multiple interpretations. But I genuinely think, and we explain in our brief, why it authorizes the hatchery to send flow down the hatchery channel. But I'd like to emphasize the merits of the water rights aren't before the court on this appeal. But the problem is you can only adjudicate their claim by making a finding that the hatchery is violating, is making illegal diversions despite having these permits that were established by the state. And they had the opportunity to bring those complaints in the 40s. And it's also worth bearing in mind that if they were to win on this claim, then every time Structure 2 was closed, it would violate Washington state law. And that would severely interfere with the operation of the hatchery. The hatchery's consistently sent flow down the hatchery channel to flush out the smolt when it's time for them to emigrate, to bring back the broodstock salmon. Moreover, whenever there's high flood waters, which occurs about once a year, maybe twice, they have to close Structure 2 somewhat or else the hatchery property itself would flood, parts of it, and adjacent landowners would flood. So they're objecting to operations of the hatchery that have been occurring for well over 67 years with full knowledge of the state of Washington. The state of Washington was aware of those operations when they issued the first permit. Aware again in 1983. The plaintiffs have long been aware. It's all been public. Ms. Bullitt lives next to the hatchery. And we provided all this information in response to FOIA requests in 2000. And they still waited nine more years to file their suit. So the problem is they're trying to adjudicate an issue that could have been resolved back then and the permit is a one-time thing. It's illegal to divert until you obtain the permit. So the first violation occurred then if the permit is unsatisfactory. The agency doesn't go back and get a permit each and every time it operates Structure 2. It's the one time. And they failed to bring the lawsuit in a timely fashion. And I think under this court's precedent in Hell's Canyon and Shiny Rock the court recognized that you can't bring an APA cause of action years after the fact to reopen something that was well resolved previously. I think it's worth keeping in mind that this would severely impact people's expectations. There are all the fishermen who rely on these fish for harvest. Two Indian tribes immediately south  All the adjacent landowners. And it would be most unjust to try to reopen this at this point because permits were issued in the 40s. The record on that is going to be limited. Now the permit you're talking about doesn't talk about Channel 2, right? No, it presumes that Channel 2 is there. I mean, this is what's odd. It says there's no diversions. And the problem is the only place the water could be is Channel 2. Maybe it helps to try to explain this. And I'm sorry there wasn't an image that I could have provided in the briefs. Icicle Creek comes down. The original channel kind of goes off like this. The hatchery channel comes down. They reconnect and all the flow goes down the channel. So the water stays in the channel. And the oddity is that they couldn't have had a diversion here. I mean, what the permit says is that sending it into the natural channel or the historic channel was the diversion. The permit presumes that the hatchery channel is legal. That you're allowed to send flow directly down the hatchery channel. So the permit was clearly aware that the flow was going to be going down the hatchery channel. Why was it couched in those terms? When I first read it, I thought it was backwards. It does seem very odd. And unfortunately, I'm not precisely sure why it was couched in those terms. I thought you were talking about something else rather than this because it's very odd terms. It's hard for me to figure out what that means. I think, and this gets us to why this is better resolved by the states. I mean, these permits were issued by the Department of Ecology through public processes. And the hatchery has always recognized and gone to the state to get its water rights. Has always been subject to the Ecology, been willing to go through those processes. And the State of Ecology I mean, they say they've never spoken to this issue. And it's true that since they've requested enforcement, Ecology hasn't expressly said, we're not going to enforce. But Ecology reviewed these operations in the 40s and okayed them. They were familiar with precisely these operations. They reviewed them again in 83 and here there's excerpts of record at 53 and 58. And there they said they were aware of how things are operated and they were again okay with it. So the state clearly disagrees. If the state had a problem with sending a flow down the hatchery channel, it theoretically would have expressed that in the water rights process. I thought going into this that maybe we ought to ask for the views of the state because they're the missing party in this. If they came in and said you need a permit, we agree then it would be a different case. If they came in and said you need a permit first, I don't know that we'd be in federal court. I mean the hatchery has consistently gone to the state. Second, the state does not appear to agree that the hatchery needs a permit. Yeah, I mean the key word is appear. The other thing is the state might well then have to address the question of how it should conduct itself given the way it's conducted itself over the last 67 years. And I mean one thing to keep in mind is going back to get the permit now, the hatchery, all of its rights would now be junior instead of senior and waiting, sitting on your hands for 67 years, seriously prejudices the hatchery in that manner to say you don't have what you thought you had. And we could have litigated this at any point, but now now that the river is close to over, is over-appropriated now we're going to come in and say what you've been doing all this time is illegal. And there's no excuse. I mean the continuing violations doctrine has never, to my knowledge, been extended to a situation like this where it's clear everyone knew precisely how it was operating for 67 years. And in fact it's never been extended to Section 2401, which is not your typical statute of limitations. It's a jurisdictional bar. It is a condition on the waiver of sovereign immunity. And it says when a claim first accrues. And that's crucial because the first accrual these precise same claims could have been filed in 1943. There's nothing different today about the facts or the law that they couldn't have filed back then. So that was the first accrual. So you can't extend that indefinitely. The Supreme Court has repeatedly rejected that. I'd like to try to move on to the other two points. In our view they also lack prudential standing. And that's for two reasons. One, they don't fall within the zone of interest. And second, they're trying to assert the state's rights. And I think here it helps to look at the Supreme Court's interpretation of Section 8. And that was in I think California v. FERC is the most helpful. And specifically it's in 495 U.S. Reports at 506. And that case was about the Federal Power Act. But the provision is very similar to Section 8. And here the and it says Section 8 involves, quote, laws controlling water use and irrigation. And they say, quote, relate to proprietary rights. And then they go on to say and does not reach laws, quote, relating to other water uses that do not implicate proprietary rights, end quote. And it's helpful to remember what that case was about. It was about minimum in-stream flows. And the court specifically found that those don't relate to proprietary rights. So the state laws they're relying on here for their alleged standing, the minimum in-stream flows, the fishways, those aren't proprietary rights laws. The Supreme Court's language in California v. FERC makes it clear that Section 8 isn't about those laws and isn't meant to extend that far. I'd also emphasize that this actually isn't just outside the zone of interest. It's contrary to the zone of interest. Because allowing them to proceed would take these issues out of the states. And the Hatchery has willingly gone to the state for the last 70 years with respect to water rights and put it in federal court. That would upend the entire point of Section 8. You mentioned a moment ago that if you, you seem to be saying this is much ado about nothing. All right, we'll go get a permit. Happy. That if you did that, your rights would be subordinate to others. It would be, well, our position in that. What exactly is the others? Sorry, there are lots of people who appropriate water from Icicle Creek. When your water right, your seniority is dependent on when you obtain the permit, when you appropriate. Our position would be if we were forced to go back, which we don't think we should be. Your position would be you have a prior right with a permit and this modification, right? Yes. So you don't lose your place. If the court, if the state accepted that. But, I mean, part of the problem here is if that's true too, then all of this does, then their case doesn't really make sense. But the problem is there's a real risk that our rights would then become junior. And then someone could come in and say you can't do that. And among other things it would relate to things like the minimum in-stream flow, which in its own way gets complicated because the Hatchery Channel, in our view, and apparently in the state's view, is now part of Icicle Creek. And that makes sense. All the water comes down and it comes out the other end. There are some changes. I don't want to suggest that all the water does that. But it's different than, for example, an irrigation channel where the water just goes off and irrigates a land somewhere. But we're in the ironic position of assessing the value of the farm fish versus the wild fish, right? That's not the argument. Which fish we want to get the water if there's not sufficient water? In part. In part. But that's an Endangered Species Act suit. And I note that we did not dispute their standing to bring Endangered Species Act claims. They challenged this hatchery successfully in this court. And they can bring those types of claims because it's about protecting people with their types of interests. The problem is this claim is not about that. The Reclamation Act is not about that. And it bears emphasis that this state may not feel will be adequately protected here. If, for example, the court were to remand and the district court were to litigate the state law issues, there may be results of that order that the state would not like. And that's precisely why these people are not in the proper position to represent the state's interests under the Reclamation Act. Now, Councilor mentioned extensive mediation in this matter. During that whole process, was the state involved in any way? As Judge Thomas pointed out, one of the key players seemed to be missing from this litigation. I wonder what their position would be if you were to seek a diversion permit and how they would feel about linking it back to the original permits that were issued. I don't know what their position on that would be. As part of mediation, Department of Ecology was, I believe, spoken with. And I should emphasize there are a lot of other processes going on which aren't related to litigation. The Icicle Creek Restoration Project involves lots of stakeholders, including the tribes, including the state. That's why I think circuit mediation actually helps because, as opposed to private mediation, our circuit mediators bring in non-parties. And it looks to me as though, from the outside, you've got a lot of stakeholders here. And that's not uncommon in the Northwest. You've got a lot of stakeholders on water issues. And it's better to if you can do it within the bounds of the law. And I should say this, we participate in circuit mediation. But I gather you, like your colleague, don't view this with an anticipation of success. We're always happy to mediate and discuss these issues, but I should say we tried very hard for a very long time. It's surprising because, you know, in a sense, you're all focusing on the same kinds of values. This isn't a battle between the mining company and the range management, the ranchers. You're all pretty much focusing on obviously you have different points of view, you have different needs and so forth. But it just seems classically the kind of case that ought to be resolved on the combatants. A lot of it comes down to technical. Don't divert this much water then because it really hurts us. I mean, those are the kind of technical issues that you can the lodge is interested in, people who want to protect the natural habitat of the river are interested in, and you're interested in, in a different way. I agree with all of that. And obviously we'd like to find a resolution that would make everyone happy. I would emphasize, though, that in part, this does happen through other processes. I mean, the Department of Ecology is in the position to determine water rights and think about all the users up and down the stream. And they've decided, I mean, one thing is they have gone to the Department of Ecology, they just haven't liked the answers they've gotten. The Department of Ecology has not decided to adopt their position, and that makes them distressed. But that's, I mean, that's how that's a... They said they didn't have the authority to address it, which strikes me as very peculiar. They don't have, they don't have to address it as part of the 401 certification process. So what's the mechanism that they're going to have available to them to get a declaration about whether or not you need a permit? They can petition the agency, but they have no legal right under state law to demand, because they have no water rights, to demand that the state adjudicate our water rights. But that's, I mean, I think this is interesting, right? I mean, their argument against abstention highlights that they don't have legal rights that they're trying to assert. And that shouldn't be. It can't be that we are bringing state law claims that we don't have any right to bring under state law, and so a federal court should adjudicate them instead of the state agency that deals with those rights. I mean, that seems completely contrary also to the Reclamation Act, which I'd also emphasize, and I know I'm running out of time, but I would like to touch on this. The Reclamation Act does not apply to the hatchery's current operations, and the history of this is complex, and it is ambiguous. But the better interpretation, in our view, is that the hatchery's current operations are under the Mitchell Act. And it's true the agency has sometimes said inconsistent things about this, as have the plaintiffs, who also identified the Mitchell Act, as has this court has said, the Mitchell Act. The court hasn't said anything inconsistent yet. We're hoping you won't. But the way this works, and the statutes are complicated, is the initial Grand Coulee Project was authorized by the Rivers and Harbors Act of 1935. That doesn't mention the Bureau of Reclamation or Reclamation laws. No need to. I mean, this is not an either-or, either it's this or it's that. There's no need to. I don't understand your point. I mean, I read it, but I don't understand it. I mean, the thing is, the question becomes, does an agency's operations, what statutes does an agency act under? And there's nothing suggesting that the Reclamation Act governs how the Fish and Wildlife runs a fishery. And that's the problem. It's very strange. I'm aware of no precedent in which anyone has held that the Reclamation Act governs the Fish and Wildlife Service, much less that it governs hatcheries. And it's in part, it doesn't really make much sense. I mean, the nearest irrigation project is over 80 miles away, a federal irrigation project. So it doesn't make sense for the Reclamation Act to govern this hatchery. I want to emphasize, that doesn't mean that the case law, though, seems to have unmoored the language used in irrigation. Fair to say? I mean, the case law is definitely not on your side. Oh, I strongly disagree. I mean, so first, in California You agree that it's not confined to irrigation. There are other uses to which the Reclamation Act applies. Yes, yes. Sorry. If that's... I'm not aware of any case in which they said the Reclamation Act applies to a project operated by an agency other than Reclamation. I mean, it's one thing to apply the Reclamation Act to a dam run by Reclamation that has both hydropower and irrigation purposes. It's quite another to disconnect it entirely from the agency that operates under the statute to a totally different purpose. And, I mean, it was transferred to the Fish and Wildlife Service. I also... I mean... That means it's outside the statutory reach if you transfer it into an agency? Well, it means that that's no longer what governs it. It's not governed by the Reclamation Act. But I'd like to just also touch on Finality Critter, which is their argument is each and every diversion is a final agency action, and that cannot be. That would involve bringing claims into court multiple times a year about actions that are playing out day by day, and there's no position for that. The way an operations and management plan is developed is in the context of a larger regulatory program. And here, the agency does it through its biological opinions for the ESA and under the Clean Water Act. And the problem for them is they tried to challenge that, but they mooted it out because they won their other case against the same exact plan. So you can't... I mean, there is a final agency action, but the one they challenged is gone. It was mooted out. It was vacated. And that's in their complaint. They challenged it, and so you can't just come in and challenge the overall operations when you don't challenge the plan. And abstention, we think, is highly called for here. This falls well within a lot of the court's abstention doctrines. Is this precise issue before the state, the need for a permit? Is that issue precisely before the state? No, because the state believes that we have a permit. So what does this abstention necessarily accomplish? I mean, I think that it accomplishes that they... or gives you a little bit more ammunition to make the argument in the next case, perhaps. But what does it accomplish in terms of this dispute? Well, first, it could get resolved. They could get a result they like from one of these other processes. It could be that the flow management plan will impose something they'll like. The other thing is... But it's not going to make a determination on whether you need a permit or not. No. Or a fore proceeding is not. So, I mean, the question is... I can understand the impulse of the district court to say let the state processes play out. But there really aren't any state processes that play out with the determination of whether or not you need a permit. Right? Well, only because these people have no rights under state law. But that's pretty... No, but I mean, usually when you do an abstention, you say, alright, something's happening in state court. And your position is, well, they have no right to go in state court, so let them go into state court. The federal court's right to abstain. It seems like it's a circular argument. Well, here, I mean, I would also emphasize that they think they have the right to be in state court. They're raising these complaints. They're going to adjudicate it up through the system. And as you noted earlier, they will go to the state courts. On the 404 proceeding. In the... And they will pursue their arguments that the state has to review this as part of that. Let me ask you another question. I mean, the doctrine of primary jurisdiction, you know, we were discussing it yesterday in the context of a different case, but we've never applied it to state agencies, as far as I know, in this circuit. I... And actually, I think the United States has taken some different positions on whether or not that's appropriate. I thought this court did in Sintac. I thought the court did... It's a very different statutory scheme. It did in Sintac, but in that case, didn't they talk about Congressional authority, if I'm not mistaken? Congress had delegated it... You can't use the doctrine... You really shouldn't use the doctrine of primary jurisdiction unless it's contemplated by Congress that you have that. So what's your best argument that Congress intended this? Section 8 says that the goal of Section 8 is not to interfere with the state's laws governing appropriation, distribution, and of water used in irrigation. So if... Section 8 makes it clear that the federal government, if it applies to this project, goes to the states to get its water. And given that that's what's happened here, it seems like Congress did delegate this to the state. This is a very different case from a case where the state has come into federal court or the federal agencies are refusing to comply with the state's orders, right? I mean, there, Congress indicated it goes to the state. Our question is taking over time, but I want to make sure my colleagues have got all their questions answered. Thank you for your argument. Thank you. And we'll hear rebuttal. Thank you, Your Honor. I'd like to briefly address some of the credential standing or statutory standing arguments made by the defendants. The Administrative Procedure Act was passed by Congress to broadly provide for causes of action challenging administrative agencies. And it therefore has a very lenient credential standing requirement. A plaintiff's grievance must only arguably fall within the zone of interest intended to be protected by the statute. And in applying that test, the relevant statute is applied broadly beyond the actual statute alleged to have been violated. So here, Section 8 of the Reclamation Act incorporates federal law, I'm sorry, incorporates state law, applies certain state laws on federal reclamation projects pursuant to federal law. And accordingly, those state statutes should be considered in undertaking the credential standing analysis. That was the decision of the only court that's actually addressed this issue, the Eastern District of California in the Natural Resources Defense Council case versus Patterson. And it's worth noting that there, the federal defendants agreed with that proposition, that the state statutes are relevant to the credential standing analysis. Here, plaintiffs seek to protect a variety of interests related to their aesthetic and conservational and recreational interest in Icicle Creek. And those are all based on the fact that they are beneficiaries and users of the in-stream flow water rights for Icicle Creek. The Supreme Court interpreted the purposes of Section 8 of the Reclamation Act in the primary cases on Section 8 of the Reclamation Act as intended to affect just such a purpose, primarily intent to ensure that reclamation projects comply with state water laws in the same manner as any other state water, any other user of water in the local states. Plaintiffs' interests are not inconsistent with that purpose. And certainly plaintiffs' interests aren't inconsistent with the Washington Water Code, which is intended to promote use of water in a manner that protects in-stream values. In fact, it reserves all unappropriated waters to the public, and plaintiffs' interests are certainly aligned with the in-stream water rights appropriated for Icicle Creek, which are explicitly intended to protect various recreational and conservational interests. Congress passed Section 8 of the Reclamation Act to ensure that reclamation projects, including the Leadworth National Fish Hatchery, which is a component of the Grand Coulee Project, it was built as part of the Grand Coulee Project, comply with local state water laws. The District Court's decision undermines that intent. Plaintiffs respectfully request that this Court, in its discretionary position, de novo review of the District Court's decision reverse and remand for further proceedings. Thank you, counsel. Thank you both for your arguments. Thank you for coming down from Portland and from D.C. I argue today it's an important case, and your arguments have been very helpful today. We will be in recess for the morning.
judges: Dearie, Thomas, Nguyen